### In re UNITCAST, INC. fka William Cook North American Unitcast, Inc., Debtor.

**Bankruptcy No. 93–31383.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

May 7, 1997.

---

E. James Hopple, Columbus, OH, for Debtor.

Thomas J. Schank, Toledo, OH, for Unsecured Creditors' Committee.

Bruce C. French, Lima, OH, Chapter 7 Trustee.

Katherine Raup O'Connell, John Stockwell, Toledo, OH, for Findley Davies & Co.

James F. Dettinger, Toledo, OH, for Industrial Scrap, Inc.

Rosemary L. Phillips, Washington, DC, for Pension Benefit Guaranty Corporation.

Donnita Carroll, Revenue Recovery Section, Columbus, OH, for Ohio Bur. of Employ. Serv.

Gary R. Taylor, Toledo, OH, for City of Toledo.

Mary Ann Whipple, Toledo, OH, for Schottenstein, Zox & Dunn.

H. Buswell Roberts, Jr., Toledo, OH, for Midwest Environmental Consultants and B.R. Holdings, Inc.

Howard B. Hershman, Toledo, OH, for W.E. Lott, Rick Olt and William Eachus.

Richard A. Scheich, Toledo, OH, for Fisher Acquisition & Development Corporation.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

At issue in this case is the Motion of the United States Internal Revenue Service (hereafter the "IRS") for Accounting, Disgorgement and Payment of United States' Post–Petition Tax Claim. This issue is before the Court upon the Motions for Summary Judgment filed by various professionals employed by the Debtor–In–Possession while it operated under Chapter 11, before the subsequent conversion of the case to Chapter 7. These professional administrative expense creditors (hereafter the "professionals") include Schottenstein, Zox & Dunn (attorneys

for the Debtor–In–Possession); William Eachus (business consultant); and Richard Olt (accountant); Findley Davies and Company (employee benefit consultant); Bugbee & Conkle (special counsel regarding worker's compensations claims); Midwest Environmental Consultants, Inc. (engineering and environmental consultants); Hunter & Shank Co., L.P.A. (attorneys for the Unsecured Creditors' Committee); and Philip Adams (accountant for the Unsecured Creditors' Committee). The IRS has filed a Cross Motion for Summary Judgment. The Motion for Disgorgement is supported by the Ohio Bureau of Workers' Compensation (hereafter "OWC"), the Ohio Bureau of Employment Services (hereafter the "OBES"), and the United States Trustee. The United States Trustee has also filed a Further Request for Court Determination As To Manner In Which Funds Should Be Distributed And Interest Upon Funds Ordered Disgorged. However, neither the OBES, OWC, or United States Trustee has expressed an opinion on the merits of the IRS's administrative expense claim which underlies its motion for disgorgement and payment of its claim. William Eachus and Richard Olt have also filed a Supplemental Motion for Summary Judgment Regarding Subordination of Claims of the IRS. The parties have agreed to the present posture of this controversy as a contested matter.

This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the professionals are entitled to summary judgment, and that the IRS's Motion for Accounting, Disgorgement and Payment of United States' Post–Petition Tax Claim should be denied. This Court also finds that it is premature to reach the issue of the manner in which funds should be distributed and whether interest should likewise be disgorged, or whether the IRS's claim should be subordinated.

### FACTS

The Debtor corporation filed for Chapter 11 bankruptcy protection on May 4, 1993, and remained a Debtor–In–Possession until June 1, 1995, when a Chapter 11 Trustee was appointed. On July 17, 1995, the case was converted to a case under Chapter 7 following the sale of the business. It is now uncontroverted that there will not be enough assets in the Chapter 7 case to pay all the unpaid Chapter 11 administrative expenses once the Chapter 7 administrative expenses have been paid. The IRS seeks to have the Chapter 11 professionals employed by the Debtor–In–Possession disgorge the interim fees they were paid during the Chapter 11 case so that a redistribution may occur whereby all Chapter 11 administrative expenses will be paid on a pro rata basis. The matter is decisional upon the motions and cross motion for summary judgment filed by the parties.

The IRS claims that the professionals in this case have been paid a greater share of their Chapter 11 administrative expense claims than it has. The IRS's administrative expense claim is based upon two types of extractions: (1) unpaid postpetition payroll taxes for the third quarter of 1993, and (2) penalties provided for in the Internal Revenue Code for the Debtor's failure to fully fund its pension plan. The payroll portion is relatively small. According to the IRS it is due One Hundred Seventy-nine Thousand Six Hundred Sixty-one and 03/100 Dollars ($179,661.03) for unpaid payroll taxes, including penalties and interest. The IRS's claim for penalties which arise from the Debtor's failure to fully fund its pension plan are much larger. The IRS seeks a One Million Eight Hundred Six Thousand Four and 10/100 Dollars ($1,806,004.10) for the Debtor's failure to fully fund its pension plan, which includes penalties under 26 U.S.C. § 4971(a) in the amount of One Hundred Sixty-one Thousand Eight Hundred Thirty-two Dollars ($161,832.00) and penalties arising under 26 U.S.C. § 4971(b) in the amount of One Million Six Hundred Eighteen Three Hundred Twenty Dollars ($1,618,320.00), plus Twenty-five Thousand Eight Hundred Fifty-two and 10/100 Dollars ($25,852.10) in interest.

Thus, in total, the IRS claims it is presently due One Million Nine Hundred Eighty-five Thousand Six Hundred Sixty-five and 13/100

Dollars ($1,985,665.13). The IRS was also paid an additional Two Million Two Hundred Eighty-one Thousand Four Hundred Seventy-six and 28/100 Dollars ($2,281,476.28) in payroll taxes during the Chapter 11 case. This brings the total amount of its claim, both paid and unpaid, to Four Million Two Hundred Sixty-seven One Hundred Forty-one and 41/100 Dollars ($4,267,141.41). Accordingly, the IRS argues that it has been paid only 53.47% percent of its claim. The IRS also notes that the professionals have been paid between 64.01% and 89.12%, of their administrative expense claims, with the exception of Findley Davies and Company which has been paid 100%.

The IRS's claim for penalties as the result of the Debtor's failure to fully fund its pension plan arises from the plan's funding deficiencies which existed in large part prepetition. According to Findley Davies and Company, who was appointed to serve as employee benefit consultant for the Debtor, and whose duty it was to prepare the actuarial valuations of the Unitcast retirement plan as of July 1 st 1991, 1992 and 1993, the deficiencies in the pension plan were as follows: for plan year ended June 30, 1990, Five Hundred Eighty-six Thousand Five Hundred Ninety-six Dollars ($586,596.00); for plan year ended June 30, 1991, Seven Hundred Nineteen Thousand Seven Hundred Fifty-five ($719,755.00); for plan year ended June 30, 1992, One Million One Hundred Fifteen Thousand Three Hundred Nine Dollars (S 1,115,309.00); and for plan year ended June 30, 1993, One Million Six Hundred Forty-four Thousand Sixty-four Dollars ($1,644,064.00). These funding deficiencies are cumulative, so that a funding deficiency in one year, if unpaid, constitutes a funding deficiency in the following year as well. Thus, the bulk of the funding deficiency in this case related to employee benefits attributable to employee labor done prepetition (the bankruptcy petition date was May 4, 1993).

The OWC and the OBES support the IRS's Motion for Disgorgement. The OWC states that it has filed proofs of claim in excess of One Million Dollars ($1,000,000.00), and further asserts that "[p]ortions of this claim may qualify for Chapter 11 administrative expense treatment due to the Debtor's election for retroactive coverage." The OBES states that it has filed proofs of claim herein in excess of One Hundred Thousand Dollars ($100,000.00) and that "portions of this claim may qualify for Chapter 11 administrative expense treatment." Neither have argued under what authority and to what extent their claims may be entitled to administrative expense status. Nor have they provided information as to what percent of their purported administrative claim has already been paid.

## LAW

The amendments to the Bankruptcy Code made by the Bankruptcy Reform Act of 1994 do not apply in this case, as the petition date of the present bankruptcy case precedes the effective date of the amendments. The applicable portions of the Bankruptcy Code, 11 U.S.C. § 101 et seq., are as follows:

**11 U.S.C. § 503. Allowance of administrative expenses**

(a) An entity may file a request for payment of administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph[.]

**11 U.S.C. § 507. Priorities**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under § 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.].

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(E) An excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

The relevant portions of the Internal Revenue Code, Title 26 of the United States Code, provides as follows:

**26 U.S.C. § 412. Minimum funding standards**

(a) **General rule.**-Except as provided in subsection (h), this section applies to a plan if, for any plan year beginning on or after the effective date of this section for such plan-

(1) such plan included a trust which qualified (or was determined by the Secretary to have qualified) under section 401(a), or

(2) such plan satisfied (or was determined by the Secretary to have satisfied) the requirements of section 403(a).

A plan to which this section applies shall have satisfied the minimum funding standard for such plan for a plan year if as of the end of such plan year, the plan does not have an accumulated funding deficiency. For purposes of this section and section 4971, the term "accumulated funding deficiency" means for any plan the excess of the total charges to the funding standard account for all plan years (beginning with the first plan year to which this section applies) over the total credits to such account for such years or, if less, the ex-

cess of the total charges to the alternative minimum funding standard account for such plan years over the total credits to such account for such years. In any plan year in which a multiemployer plan is in reorganization, the accumulated funding deficiency of the plan shall be determined under section 418B.

(b) **Funding standard account.**-

(1) **Account required.**-Each plan to which this section applies shall establish and maintain a funding standard account. Such account shall be credited and charged solely as provided in this section.

(2) **Charges to account.**-For a plan year, the funding standard account shall be charged with the sum of-

(A) the normal cost of the plan for the plan year,

(B) the amounts necessary to amortize in equal annual installments (until fully amortized)-

(i) in the case of a plan in existence on January 1, 1974, the unfunded past service liability under the plan on the first day of the first plan year to which this section applies, over a period of 40 plan years,

(ii) in the case of a plan which comes into existence after January 1, 1974, the unfunded past service liabilities under the plan on the first day of the first plan year to which this section applies, over a period of 30 plan years,

(iii) separately, with respect to each plan year, the net increase (if any) in unfunded past service liability under the plan arising from plan amendments adopted in such year, over a period of 30 years,

(iv) separately, with respect to each plan year, the net experience loss (if any) under the plan, over a period of 5 plan years (15 plan years in the case of a multiemployer plan), and

(v) separately, with respect to each plan year, the net loss (if any) resulting from charges in actuarial assumptions under the plan, over a period of

10 plan years (30 plan years in the case of a multiemployer plan),

(C) the amount necessary to amortize each waived funding deficiency (within the meaning of subsection (d)(3)) for each prior plan year in equal annual installments (until fully amortized) over a period of 5 plan years (15 plan years in the case of a multiemployer plan), and

(D) the amount necessary to amortize in equal annual installments (until fully amortized) over a period of 5 plan years any amount credited to the funding standard account under paragraph (3)(D).

(3) **Credits to account.**-For a plan year, the funding standard amount shall be credited with the sum of-

(A) the amount considered contributed by employer to or under the plan for the plan year,

(B) the amount necessary to amortize in equal annual installments (until fully amortized)-

(i) separately, with respect to each plan year, the net decrease (if any) in unfunded past service liability under the plan arising from plan amendments adopted in such year, over a period of 30 plan years,

(ii) separately, with respect to each plan year, the net experience gain (if any) under the plan, over a period of 5 plan years (15 plan years in the case of a multiemployer plan), and

(iii) separately, with respect to each plan year, the net gain (if any) resulting from changes in actuarial assumptions used under the plan, over a period of 10 plan years (30 plan years in the case of a multiemployer plan)

(C) the amount of the waived funding deficiency (within the meaning of subsection (d)(3) for the plan year), and

(D) in the case of a plan year for which the accumulated funding deficiency is determined under the funding standard account of such plan year follows a plan year for which such deficiency was determined under the alternative minimum funding standard, the excess (if any) of any debit balance in the funding standard account (determined without regard to this subparagraph) over any debit balance in the alternative minimum funding standard account.

**26 U.S.C. § 4971. Taxes on failure to meet minimum funding standards**

(a) **Initial tax.**-For each taxable year for an employer who maintains a plan to which section 412 applies, there is hereby imposed a tax of 10 percent (5 percent in the case of a multiemployer plan) on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year.

(b) **Additional tax.**-In any case in which an initial tax is imposed by subsection (a) on an accumulated funding deficiency and the accumulated funding deficiency is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of such accumulated funding deficiency to the extent not corrected.

(c) **Definitions.**-For purposes of this section-

(1) **Accumulated funding deficiency.**-The term "accumulated funding deficiency" has the meaning given to such term by the last two sentences of section 412(a).

(2) **Correct.**-The term "correct" means, with respect to an accumulated funding deficiency, the contribution, to or under the plan, of the amount necessary to reduce such accumulated funding deficiency as of the end of a plan year in which such deficiency arose to zero.

(3) **Taxable period.**-The term "taxable period" means, with respect to an accumulated funding deficiency, the period beginning with the end of the plan year in which there is an accumulated funding deficiency and ending on the earlier of-

(A) the date of mailing of a notice of deficiency with respect to the tax imposed by subsection (a), or

(B) the date on which the tax imposed by subsection (a) is assessed.

## DISCUSSION

Determinations concerning the administration of the estate, the allowance or disallowance of claims against the estate, orders to turn over property of the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

The contested matter of the IRS's Motion for Accounting, Disgorgement and Payment of United States' Post–Petition Tax Claim is before the Court upon the various professionals' Motions for Summary Judgment, and the Cross Motion for Summary Judgment of the IRS. Motions for summary judgment are provided for in contested matters pursuant to Bankruptcy Rules 9014 and 7056. A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). Thereafter, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See also *In re Bell*, 181 B.R. 311 (Bankr. N.D.Ohio 1995).

The IRS moves for the disgorgement of interim professional fees paid during the course of this case while it was in a Chapter 11 posture, before its subsequent conversion to a Chapter 7 case. The IRS argues that because some of the Chapter 11 administra-

tive creditors have been paid a greater share of their administrative claims than others, a redistribution needs to occur so that claims are paid in a more equitable manner. The IRS further argues that trade creditors, or "ordinary course creditors" under § 363(c)(1), should be paid in full before any of the professionals because they were not in a position to control or foresee the Debtor–In–Possession's likely demise. Also, the IRS argues that it is such an ordinary course creditor, and with a claim of One Million Nine Hundred Eighty-five Thousand Six Hundred Sixty-five and 13/100 Dollars (S 1,985,665.13), it would be entitled to a lion's share of the disgorged professional fees.

For the reasons that follow, this Court finds that, (1) the IRS is not entitled to be a member of a superpriority class of creditors under § 363(c)(1), and (2) that the IRS has not shown that it is entitled to any proceeds of a pro rata redistribution of administrative expenses. These conclusions apply to the OBES and OWC as well.

■ The IRS's argument that it is entitled to a superpriority status is circuitous. The IRS would have this Court create a new class of priority "ordinary course" creditors not found in § 507 or provided for in § 726, because such creditors already receive a "de facto" superpriority status when they are paid pursuant to § 363(c)(1). Section 363(c)(1) allows a trustee or debtor-in-possession to pay creditors in the ordinary course of business, so as to allow the debtor to continue postpetition operations. The IRS argues that it should be considered a member of such a class, even though the unpaid portion of its claim was in fact not paid. However, payment would be the defining characteristic of the class. The reason the Code did not make such a class in § 726 is clear. There was no need to do so because such creditors will have already have been paid during the case pursuant to § 363(c)(1) to the extent necessary for the debtor to continue operations and preserve the assets of the bankruptcy estate.[1] The

---

1. It should be noted that for practical reasons this Court routinely orders that debtors-in-possession pay postpetition taxes as they accrue

from ongoing operations, and that failure to do so would be grounds for conversion or dismissal. This Court believes that if a business debtor

Trustee has not paid the IRS the remainder of its claim because such payment is no longer necessary in the ordinary course of the Debtor's business, because the Debtor is no longer attempting to reorganize. Accordingly, payment under § 363(c)(1) would be inappropriate.

■ Further, as the IRS has successfully argued in a recent Supreme Court case, this Court cannot categorically reorder the priority scheme established by Congress. *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). In *Noland,* the Supreme Court found that bankruptcy courts could not equitably subordinate tax penalties on a categorical basis. The Court held, "Decisions about the treatment of categories of claims in bankruptcy proceedings are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination." *Id.* at ——, 116 S.Ct. at 1527. Creating such class of creditors as the IRS now urges would clearly be such categorical reordering of priorities on a legislative level.

■ Further still, § 363(c)(1) does not mandate payment in the ordinary course of business, but only provides that the trustee (or debtor-in-possession) "may" use property in the ordinary course of business. Section 363(c)(1) contemplates that payments will be made and transactions will be entered into in the ordinary course of business when the trustee (or debtor-in-possession) decides that doing so is in the best interests of the bankruptcy estate. The Code also provides that the actual, necessary costs and expenses of preserving the estate will be accorded an administrative expense priority pursuant to § 503(b)(1)(A) and § 507(a)(1), and will be paid according to § 726.[2]

■ Finally, Congress's intent as to unpaid postpetition tax claims and penalties is clear. Congress plainly and unambiguously provided for the treatment of unpaid postpetition tax and penalty claims in § 503(b)(1)(B) and (C). That is, claims for unpaid postpetition taxes and penalties are to be dealt with in accordance with those provisions. Congress specifically provided in § 726(b) for the pro rata distribution among the various classes of priority claims, including § 503(b).[3] Even under § 105(a), as the IRS urges, this Court could not grant the IRS a superpriority status. The equitable powers of § 105 are limited by the intent and language of the Bankruptcy Code. *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987), *cert. den.* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); *In re Federated Dept. Stores, Inc.,* 44 F.3d 1310, 1318, (6th Cir.1995) (Bankruptcy Judge's inherent equitable powers must be exercised within the confines of the Bankruptcy Code), citing *In re Middleton Arms Ltd. Partnership,* 934 F.2d 723 (6th Cir.1991) quoting *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

■ Thus, for the IRS to show that disgorgement is warranted in this case, they must show that redistribution is necessary to effectuate a pro rata distribution among administrative expense creditors. While it is clear that the professionals have been paid varying percentages of their claims, it is not they who bring the present motion for disgorgement. In the context of the IRS's Motion, it would not be proper to address the issue of the propriety of disgorgement based solely upon administrative insolvency of a Chapter 11 case if the IRS does not have an

---

cannot even generate enough revenue to pay its tax liabilities as they accrue, there is little chance of a successful reorganization, and the assets available for creditors are being diminished by the ongoing operating losses. The payment of postpetition taxes is not, however, mandated by § 363(c)(1).

2. Some Courts generally allow the payment of § 503 administrative expenses before confirmation of a plan or liquidation, while others generally do not. *See Collier on Bankruptcy* § 503.03[3], 503–10 (15th ed. rev.Dec.1996).

3. Section 726(a) provides for first distribution to creditors with claims the kind specified in § 507. Section 507(a) spells out the priority of claims. First among these priorities are administrative expense priorities in § 507(a)(1), which in turn references § 503(b). Section 726(b) provides for the pro rata payment of claims within each particular paragraph of § 507(a). Thus, § 507(a)(1) claims, which are § 503(b) claims, are to be paid on a pro rata basis. This is the plain and unambiguous meaning of the statute.

interest in the proceeds of such a redistribution.[4] For the reasons that follow, this Court holds that neither the IRS, OWC, or OBES have shown as a preliminary matter that they have received less than they would receive under a pro rata distribution.[5] Therefore, they have not shown that they have standing to bring the present motion for disgorgement. Alternatively, they have also failed to show that disgorgement and redistribution are warranted in this case.

The United States does not dispute that its § 4971 claims are not "taxes" but are "penalties," pursuant to a recent decision of the Supreme Court, *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, ——, 116 S.Ct. 2106, 2114, 135 L.Ed.2d 506 (1996). Because of the Supreme Court's recent ruling, the legal issues in this case are unique. Until Reorganized CF & I the bulk of the case law appears to have defined and analyzed § 4971 claims as excise taxes rather than penalties. In this case, a determination must be made as to how the § 4971 claims are treated in bankruptcy when those claims are properly considered as "penalties" rather than "taxes."

The IRS argues that its claims under § 4971 should receive administrative expense priority under § 503(b) of the Bankruptcy Code. The IRS looks specifically to the term "including" in § 503(b) to argue that the statute is not limiting and is ambiguous as to whether penalties are to receive administrative expense priority. The IRS then directs the Court's attention to the legislative history of the Code section to see that it was derived from a section of the Bankruptcy Act, and then to cases decided under the Act to show that Congress intended non-pecuniary tax penalties *incurred* by a debtor-in-possession should be allowed as administrative expenses. The IRS argues that the § 4971 penalty was "incurred" postpetition, and is

therefore an administrative expense. The IRS then cites § 503(b)(1)(C), which they claim "plainly codifies the fact that administrative expenses include a penalty." To this last assertion, this Court agrees. This Court finds that § 503(b)(1)(C) plainly and unambiguously codifies Congress' intent as to tax penalties, and that pursuant to this provision the issue is not whether or not the penalties were incurred postpetition, but whether the taxes to which they relate were incurred postpetition.

■ Section 503(b)(1) clearly shows that Congress intended that some tax penalties would be afforded administrative expense priority. However, in § 503(b)(1)(C) Congress unambiguously declined to provide that tax penalties would be afforded administrative expense priority when they were "incurred" by the bankruptcy estate. Rather, Congress clearly and unambiguously provided that tax penalties would be afforded administrative expense priority when they "relate" to a tax of the type in 503(b)(1)(B). Section § 503(b)(1)(B) provides for administrative expense priority for taxes which are incurred by the estate. Thus, to determine whether a penalty should be allowed administrative expense priority, two things must be determined: (1) whether the penalty relates to a "tax" as the term is applied under the Bankruptcy Code, and if so, (2) whether the tax to which the penalty relates, not the penalty itself, was "incurred" by the estate.

■ A review of the plain language of § 4971 reveals that the § 4971 penalty relates to § 412 of the Internal Revenue Code, which provides for a minimum funding standard for employers with pension plans. 26 U.S.C. § 412. The IRS has not shown that the § 412 minimum funding standards are a tax as the term has been applied in bankruptcy. The IRS's Motion could fail for this

---

**4.** The United States Trustee has also requested this Court to determine the method of distribution. As to this request, and as explained infra, this Court finds it is presently premature to reach this issue.

**5.** The IRS has argued herein the propriety of their administrative expense claim, so it will be dealt with herein. The OWC and OBES only assert that some of their claims may be entitled

to administrative expense priority, but do not state what that portion might be or upon what authority such a claim might be based. Nor do they assert what percentage of their possible administrative expense claim may have been paid by the Debtor–In–Possession. It is clear that as to these creditors, a claims objection or other resolution would be necessary before the issue of payment could be resolved.

cause alone.[6] Further, for the reasons that follow, this Court finds that the professionals are entitled to summary judgment even if the § 412 minimum funding standards are considered a tax in bankruptcy, because most of § 412 liability was not "incurred" post-petition.

Again, § 503(b)(1)(C) penalties must relate to a § 503(b)(1)(B) tax. Section 503(b)(1)(B)(i) specifically excludes § 507(a)(7)[7] taxes. "The reason for the reference in [§ 503(b)] to section 507(a)([7]) is to distinguish between taxes that should be prepetition liabilities and those that should be postpetition liabilities." See 4 Collier on Bankruptcy § 507.10[1][a][ii], 507–55 (15th ed. rev.Dec.1996). If the § 412 minimum funding standards are "taxes" at all, they would fall under the category of an "excise" tax under § 507(a)(7)(E).[8]

When the excise tax at issue requires a return to be filed, § 507(a)(7)(i) encompasses those excise taxes for which two conditions are met: (1) the excise tax is on a transaction that occurred before the date of the filing of the petition, *and* (2) the return is last due under applicable law, including extensions, after three years before the filing of the bankruptcy petition. This is the plain reading of this provision. To apply these conditions to the case at bar, this Court must first determine when § 412 liability is incurred.

A review of the language of § 412 reveals that the underlying transaction was the pension plan's accrual of liability. Section 412 provides that a plan satisfies the minimum funding standard if it does not have an "accumulated funding deficiency," which is, primarily, the extent to which total charges for all plan years exceed total credits. 26 U.S.C. § 412(a). "Charges" are primarily the normal costs of the plan plus the unfunded past service liability, and "credits" are the amounts contributed by the employer to the plan. 26 U.S.C. § 412(b). Excise taxes are generally taxes imposed on acts or transactions. See Black's Law Dictionary (Sixth Edition 1990), and the language of § 507(a)(7)(E) which presumes that the excise taxes are taxes on transactions. See also *Suburban,* 998 F.2d at 340 (worker's compensation premiums are excise taxes because not assessed directly like an income tax but are indirectly assessed, the employer's obligation arising through the act or transaction of employing), noted supra. Thus, the primary underlying transaction which would give rise to a minimum funding requirement would be the employees' rendering of services, thereby causing the plan's accrual of pension liability. The accrual of the plan's operating expenses would also be transactions causing the incurrence of § 412 liability.

This Court will now consider whether the § 507(a)(7) conditions are met for the various tax years the § 412 liability was incurred. A year by year analysis is appropriate because of the § 507(a)(7)(E)(i) condition regarding the due date of returns, which are due yearly. The § 412 minimum funding standard for the plan years ending on or before June 30, 1992, would clearly fall within the § 507(a)(7) time frame, as both conditions are met. First, the plan's accrual of the pension liability clearly preceded the May 4, 1993, petition date. Second, the return for the plan years ending on or before June 30, 1992, was last due after three years before the filing of the bankruptcy petition.[9] Thus,

---

6. The OBES or OWC also have not shown that there claims are "taxes" as the term is used in the Bankruptcy Code.

7. This provision was renumbered § 507(a)(8) by the Bankruptcy Reform Act of 1994. The 1994 amendments do not apply herein as the petition date predates the effective date of the Act.

8. See *In re Suburban Motor Freight, Inc.,* 998 F.2d 338, 340 fn. 3 (1993), "The [worker's compensation] premiums [at issue] would classify as "excise" taxes since the payments are not directly assessed like an income tax but are indirectly

assessed, the employer's obligation arising through the transaction or act of employing." (quotations omitted), citing *New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714, 719 (4th Cir.1989). See also Black's Law Dictionary (Sixth Edition 1990) ("[I]n current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax.")

9. To the extent some of the returns were due before three years before the filing of the petition, any § 412 liability would fall outside § 507(a)(7). This liability would clearly be a

any penalties which relates to these years are excluded from § 503(b)(1)(B) via § 507(a)(7). Accordingly, any penalties relating to these claims cannot receive administrative expense priority under § 503(o)(1)(C).

The return for the plan year ended June 30, 1993, was due postpetition, and therefore was clearly due after three years before the May 4, 1993, petition date. However, the transaction underlying the § 412 minimum funding contribution requirement was partially prepetition and partially postpetition. The portion relating to May 4, 1993, to June 30, 1993, was based upon a postpetition transaction and therefore falls outside one of the 507(a)(7) conditions.[10] Thus, if this minimum funding contribution claim under § 412 is considered a tax, this postpetition portion would be afforded administrative priority under § 503(b)(1)(B), and the § 4971 penalty relating to it would likewise be afforded administrative priority. However, this is a very small portion of the total § 412 accumulated funding deficiency, the total having been accumulated over what the record reveals to be at least four years.[11]

It therefore appears that the bulk of the IRS's claim for § 4971 penalties would not be afforded priority treatment per § 503(b)(1)(C), as most of the penalty arises as the result of funding deficiencies which, if considered a "tax" as the term is applied under the Bankruptcy Code, would be a prepetition tax. Indeed, most of the penalty arises from transactions occurring in years prior to the plan year ended June 30, 1993.

The professionals have pointed out that the IRS has not shown that disgorgement is warranted in this case if the IRS is not allowed the bulk of its § 4971 claim as an administrative expense. This Court finds that the professionals have shown a lacking element in the IRS's case, and have met their initial burden upon summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, (1986) (the moving party can discharge this burden either by coming forward with evidence showing the absence of a genuine issue of material fact, or by "showing" that there is no such issue by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case). The burden on the professionals' motions for summary judgment therefore shifts to the IRS to show a genuine issue of material fact.

This Court finds that the IRS has failed to discharge its burden by showing that disgorgement is proper in this case if it is not allowed as an administrative expense the full amount of its § 4971 claim. *Id.* at 321, 106 S.Ct. at 2552 (the party opposing the motion for summary judgment bears the burden after the moving party has met its burden of coming forward and showing an absence of any genuine issue of material fact). Indeed, the IRS argues that it has received only 53.47% of its administrative expense claim (arrived at by taking the payroll taxes outstanding plus the § 4971 penalties, then divided by the total they were due during the case). But the IRS's § 4971 penalties are the bulk of the unpaid portion of its claim. If the IRS's § 4971 administrative claims are substantially reduced, then by its own formula it will have received a greater percentage than almost any other creditor. Accordingly, the professionals are entitled to summary

---

general unsecured claim not entitled to either first priority per § 507(a)(1) or seventh priority per § 507(a)(7). It should also be noted that a penalty relating to a § 507(a)(7) tax would not be afforded priority treatment under § 507(a)(7)(G) unless it were in compensation for actual pecuniary loss.

10. Regarding the portion of § 412 minimum funding contributions for July 1, 1992, to May 3, 1993, both the § 507(a)(7) conditions are met. The underlying transaction occurred prepetition, and the return was last due after three years before the filing of the petition. Thus, this portion would be included in § 507(a)(7), and there-

fore excluded from § 503(b)(1)(B). Accordingly, a penalty relating to this portion cannot be accorded administrative priority under § 503(b)(1)(C).

11. The amount accumulated in the entire year ended June 30, 1993, appears to be Five Hundred Twenty-eight Thousand Seven Hundred Fifty-five Dollars ($528,755.00). The fifty-eight day portion of this amount attributable to the postpetition period would appear to be small compared with the entire amount of the IRS's § 4971 claim, which totals One Million Eight Hundred Six Thousand Four and 10/100 Dollars ($1,806,-004.10)

judgment as a matter of law, and the IRS's Motion for Disgorgement shall be denied.

Similarly, the OBES and OWC have likewise not shown what portion of their claims are entitled to administrative expense priority and that a motion for disgorgement would be proper as to them.

The United States Trustee has also filed a Request for Court Determination as to Manner in which Funds Should Be Distributed and Interest Upon Funds Ordered Disgorged. Because no administrative expense creditor has come forward with a claim shown to be entitled to such disgorgement and redistribution, and because this Court has not been made aware of the administrative expense claims that remain to be paid, this Court finds that is it premature to presently reach this issue. Similarly, this Court finds it premature to reach the issue of subordination raised in the Motion of William Eachus and Richard Olt for Summary Judgment Regarding Subordination of Claims of the IRS.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motions for Summary Judgment of the professionals in this case be, and are hereby, *GRANTED*.

It is **FURTHER ORDERED** that the Cross Motion for Summary Judgment of the United States Internal Revenue Service be, and is hereby, *DENIED*.

It is **FURTHER ORDERED** that the United States Internal Revenue Service's Motion for Accounting and Disgorgement, and Payment of its Tax Claim, be and is hereby, *DENIED*.