**In re MARY JAMES, INC., Debtor.**

**Bankruptcy No. 89–11022.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 1, 1997.

Richardo I. Kilpatrick, for Chapter 7 Trustee.

Leslie K. Berg, Attorney Advisor, Office of the United States Trustee.

### OPINION REGARDING PRIORITY OF FEES UNDER CHAPTER 123 OF TITLE 28

ARTHUR J. SPECTOR, Bankruptcy Judge.

#### Introduction

Mary James, Inc. filed a petition for chapter 11 relief on January 13, 1989. The case was converted to chapter 7 on September 26, 1991. The trustee filed a final report on February 12, 1997, and amended that report on March 3, 1997. The Court entered an order approving the final report on April 30, 1997.

A matter left unresolved, however, concerned $900.00 in pre-conversion quarterly fees for which the estate is liable under 28 U.S.C. § 1930(a)(6). The estate is insolvent, and those fees can be paid in full only if they are accorded first-level priority status. The case trustee proposed to do just that.

But there is authority for the proposition that such treatment is improper. And unfortunately, the Court cannot attach much significance to the fact that the case trustee did not champion this viewpoint. *See generally J. Nat'l Ass'n Bankr.Trustees,* Vol. 13, No. 2 (Summer 1997), at p. 10 (suggesting based on the results of a trustee poll "that the supervisory role of the U.S. [Trustee] ... compromise[s] the independence of panel trustees to administer cases according to their own business judgment"). We therefore asked that the U.S. trustee brief his position with respect to this issue.

On May 28, 1997, the United States trustee filed a Statement and Citation of Authority in Support of Trustee's Final Report. In this Statement, the U.S. trustee asserted that the priority which the case trustee assigned to

the quarterly fees is consistent with, and mandated by, the Bankruptcy Code. Subject to an important qualification, we conclude that this assertion is correct.

## Discussion

After filing its chapter 11 bankruptcy petition, the Debtor was required to pay "a quarterly fee ... to the United States trustee ... for each quarter ... until the case is converted or dismissed, whichever occurs first." 28 U.S.C. § 1930(a)(6). These quarterly fees are assigned first-priority status under the Code:

The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) ..., and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(1).[1]

The payment scheme outlined in § 507 is generally applicable in chapter 7. *See* 11 U.S.C. § 726(a)(1). However, "a claim allowed under section 503(b) [i.e., administrative expenses] ... incurred under ... chapter [7] after ... conversion has priority over a claim allowed under section 503(b) ... incurred under any other chapter ... or under ... chapter [7] before such conversion." 11 U.S.C. § 726(b).

Pursuant to § 726(b), then, chapter 11 administrative expenses are subordinated to chapter 7 administrative expenses in those cases which are converted from the former chapter to the latter. In such circumstances, a few courts have held that quarterly fees are likewise subordinated. *In re Discount Printing*, 199 B.R. 145, 147–48 (Bankr. S.D.W.Va.1995); *In re Ehrman*, 171 B.R. 683, 685–86, 25 B.C.D. 1746, 31 C.B.C.2d 1484 (Bankr.D.Ariz.1994), *rev'd*, 184 B.R. 362, 27 B.C.D. 673 (D.Ariz.1995); *In re Endy*, 166 B.R. 438, 439 (Bankr.D.Nev.1994), *aff'd on other grounds*, 181 B.R. 526 (D.Nev.1995), *vacated*, 104 F.3d 1154 (9th Cir.1997); *In re Wetmore*, 117 B.R. 201, 202 (Bankr.W.D.Pa. 1990).

Two arguments were offered in support of this holding. One is that the term " 'admin-istrative expenses' include[s] claims ... under chapter 123 of title 28." *Id.* at 201. As administrative expenses, they fall within the scope of, and are subject to subordination under, § 726(b). *Id.* at 201–02.

The list of administrative expenses in § 503(b) is not exhaustive. *In re Younger*, 165 B.R. 965, 968 (S.D.Ga.1994), aff'd, 51 F.3d 1051 (11th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 297, 133 L.Ed.2d 204 (1995). Thus the text of § 503(b) does not preclude the possibility that quarterly fees are within its ambit. *But see In re Juhl Enters.*, 921 F.2d 800, 803 (8th Cir.1990) (The conclusion "that the Trustee's quarterly fees" are not a § 503(b) administrative expense is "support[ed by] ... § 503(b) itself, which does not include ... [such] fees in its list of administrative expenses."); *see generally In re Colortex Indus., Inc.*, 19 F.3d 1371, 1377 (11th Cir.1994) ("[S]ection 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors.").

The proposition that quarterly fees are administrative expenses is, however, at odds with § 507(a)(1). That subsection separately identifies administrative expenses and "fees ... assessed against the estate under chapter 123." This logically implies that such fees are not "administrative expenses allowed under § 503(b)." *See Juhl*, 921 F.2d at 803 ("Subsection 507(a)(1) refers to 'administrative expenses allowed under section 503(b) of this title, and any [quarterly fees].' The comma between the two phrases combined with the conjunction 'and' indicates that the two kinds of claims are different. *See [United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989),] ... 489 U.S. at 241–42, 109 S.Ct. at 1030–31 (stating that when a phrase is followed by a comma and the words 'and any,' the phrase is independent of the phrase that follows and the items in the phrases are different)."); *Ehrman*, 184 B.R. at 366 ("The minority view [subordinating chapter 123 fees] ... would render the last clause of § 507(a) superfluous."); *see generally Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 112, 111 S.Ct. 2166, 2171, 115 L.Ed.2d 96 (1991)

---

1. Chapter 123 includes § 1930.

("[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.").

Perhaps mindful of this problem, the court in *Wetmore* stopped short of describing quarterly fees as a § 503(b) expense. Instead, the court viewed such fees as a species of "administrative expense" which is not subject to allowance under § 503(b). *See Wetmore*, 117 B.R. at 201.

By taking this approach, *Wetmore* steers clear of a conflict with § 507(a)(1). But the court creates a more serious problem in the process. Section 726(b) does not refer to "administrative expenses," as such. Instead, it subordinates pre-conversion "claim[s] allowed under section 503(b)." 11 U.S.C. § 726(b). Thus *Wetmore*'s premise—that quarterly fees are a non- § 503(b) administrative expense—does not warrant the conclusion that they are subordinated pursuant to § 726(b).

The second rationale for subordinating quarterly fees does not fare much better. As *Wetmore* explained, "[i]t is essential, when the case is in Chapter 7, that the estate be liquidated, wound-up and closed. In order to accomplish that essential purpose, it is necessary that the expenses of doing so be given first priority." *Wetmore*, 117 B.R. at 202. *See also Discount Printing*, 199 B.R. at 148; *Ehrman*, 171 B.R. at 685; *Endy*, 166 B.R. at 439.

*Wetmore* may be correct in asserting that § 726(b) evinces a congressional intent to facilitate the "winding up" of cases converted to chapter 7. *See generally* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 186–87 (1977)("[T]he first priority is for administrative expenses. Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." (footnote omitted)). But as is so often true, that policy is subject to a countervailing policy—namely, making sure that quarterly fees are paid. *See* 11 U.S.C. § 507(a)(1); *cf. In re Prines*, 867 F.2d 478, 484 (8th Cir.1989) ("The purpose of the quarterly fee provision is to ensure the trustee program is 'paid for by the users of the bankruptcy system—not by the taxpayer.' H.R.Rep. No. 764, 99th

Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5234."). And *Wetmore* points to nothing in the Code or its legislative history to support the court's implicit contention that its holding reconciles these competing policies in a way which Congress intended.

■ Like the premature reports of Mark Twain's death, the claimed conflict between §§ 507(a)(1) and 726(b) is greatly exaggerated. The former statute simply says that § 503(b) expenses and quarterly fees are each to be accorded first-priority payment status. The latter section qualifies this rule, but only with respect to § 503(b) expenses. There is nothing in the text of § 726(b) which suggests that quarterly fees are subject to subordination. We therefore join ranks with the many courts (including two circuit courts) which have declined to subordinate quarterly fees. *See Endy*, 104 F.3d at 1157; *Juhl*, 921 F.2d at 803; *Ehrman*, 184 B.R. at 364 n. 1 (collecting cases).

■ Having rejected the proposition that § 1930 fees are subordinated to chapter 7 administrative expenses, these two classes of claims must share first-level priority in accordance with § 507(a)(1). That does not necessarily mean, however, that their payment rights are identical. As Judge Hagen explained:

> Assume by way of example that there is $6,000 available for distribution and $5,000 in accrued Chapter 7 administrative fees, $5,000 in accrued Chapter 11 administrative fees, and $5,000 in trustee's fees.
>
> Under the majority line of cases, the Chapter 7 administrative fees and the trustee's fees would take first priority and share the $6,000 *pro rata*. This would result in $3,000 to the Chapter 7 administrative fees, $3,000 to the trustee's fees, with nothing left for the Chapter 11 administrative fees.
>
> · · ·
>
> According to the alternative interpretation of the statutes, the trustee's fees would be paid *pro rata* with the total administrative fees (those incurred under both Chapter 7 and Chapter 11).

By this construction, the trustee's *pro rata* share would be $2,000. The *pro rata* share for administrative fees would be $4,000. Only at this point would § 726 come into play, pursuant to which the Chapter 7 administrative fees would receive first priority and take the entire $4,000, with nothing left for the Chapter 11 administrative fees.

*Endy,* 181 B.R. at 529 n. 3.

Judge Hagen opted for the "alternative" method of computing the respective shares of the U.S. trustee and the chapter 7 claimants. *See id.* at 529. His rationale for doing so was simple: "[Section] 726 only addresses the priority of the administrative fees and should not impact either the priority or the *pro rata* share of the trustee's fees." *Id.* The Ninth Circuit, however, was unimpressed:

By pro rating all three types of fees together, the district court's rule has the effect of diluting the Chapter 123 fees relative to the Chapter 7 administrative expenses. The inclusion of the Chapter 11 expenses in the initial pro rata apportionment works to augment the shares paid to the Chapter 7 claimants at the expense of the U.S. Trustee, in effect giving the Chapter 7 claimants two bites while the U.S. Trustee gets only one. We find this result inconsistent with Congress' direction that Chapter 123 fees receive the highest priority, *see* § 507(a)(1), and with its instruction that claims at the first level of priority share pro rata. *See* § 726(a).

*Endy,* 104 F.3d at 1157–58 (footnote omitted).

The Ninth Circuit's explanation for rejecting what it described as the district court's "novel interpretation," *id.* at 1157, is unpersuasive. The court's concern about "diluting the Chapter 123 fees relative to the Chapter 7 administrative expenses" rings hollow, because it cites no evidence that Congress preferred the former over the latter. *See supra* p. 229.

Nor are we compelled by the court's contention that the alternative approach contravenes the principle of pro rata distribution. The term "pro rata" simply means that each § 507(a)(1) claimant is to be paid in proportion to the amount of its claim. *See generally* Black's Law Dictionary (5th ed.1979) (defining "pro rata" as "[p]roportionately; ... [a]ccording to ... interest, or liability"). Both the majority and the alternative approaches respect this principle, because each relates the amount of the quarterly fees (the numerator) to the sum of § 507(a)(1) claims (the denominator). Where they differ is in determining the appropriate denominator; Judge Hagen would include the chapter 11 claims, while the majority would not. The issue, then, is how the pro rata calculation ought to be made.

In this regard, the Ninth Circuit lamented that the alternative approach allows "the Chapter 7 claimants two bites while the U.S. Trustee gets only one." The court's implication is that the "dividend" created by § 726(b)'s downgrading of chapter 11 claimants should be shared by both of the other § 507(a)(1) claimants, rather than allowing the chapter 7 claimants to reap the full benefit to the exclusion of the U.S. trustee. *See also Ehrman,* 184 B.R. at 366 (rejecting Judge Hagen's approach because it "alter[s] the plain meaning of § 507(a)").

As a matter of policy, this proposition strikes us as reasonable. But so does the proposition that chapter 7 claimants—the entities whose efforts are needed to bring the case to a close—should be the sole beneficiaries of the pre-conversion claimants' misfortune. A court therefore cannot properly rule out either the majority or the alternative method based on policy considerations. *See, e.g., Ingalls Shipbuilding v. Director, Office of Workers' Compensation Programs,* 519 U.S. ——, ——, 117 S.Ct. 796, 804, 136 L.Ed.2d 736, 750 (1997) (citing a prior decision for the proposition that the "plain language [of a statute] controls unless it leads to results that are 'absurd or glaringly unjust' " (citation omitted)). Rather, the judicial task is to consider which of the competing interpretations is most consistent with the legislative will. *See, e.g., Negonsott v. Samuels,* 507 U.S. 99, 105, 113 S.Ct. 1119, 1123, 122 L.Ed.2d 457, 465 (1993).

The U.S. trustee cited no legislative history indicating that Congress specifically addressed the question of whether the U.S.

trustee is entitled to a portion of the estate funds made available by virtue of the pre-conversion claimants' subordination.[2] The Court will therefore assume that none exists, and confine its analysis to the text of the pertinent statutes.

The top-priority class of claims comprises administrative expenses and chapter 123 fees/charges. 11 U.S.C. § 507(a)(1). Had Congress intended to elevate the latter over pre-conversion administrative expenses, it could easily have done so. But by its terms, § 726(b) relegates pre-conversion claims to only one of the sub-groups—i.e., the chapter 7 administrative claimants. The majority method nevertheless effectuates a wholesale subordination, thereby reading into § 726(b) language which does not exist.

The Ninth Circuit apparently would defend this result on the theory that the omission was inadvertent:

> The courts' struggles in interpreting these statutes stem from a serious congressional omission. Congress added the Chapter 123 fees and charges to section 507(a)(1) when it created the U.S. Trustees Program in extensive 1986 amendments to the bankruptcy code.... Prior to those amendments, the only claims that were given first level priority under section 507(a)(1) were those for section 503(b) administrative expenses. Therefore, the priority given Chapter 7 expenses in the § 726(b) exception sufficed. In the 1986 amendments, *Congress* added a new first priority claim to section 507(a)(1), but apparently *overlooked the need to address that claim's place in the section 726(b) priority scheme.*

*Endy,* 104 F.3d at 1157 (emphasis added).

Although *Endy*'s account of events is historically incorrect,[3] the court does touch upon a valid point: The plausibility of both the majority and the alternative approaches is itself reason to suspect that Congress simply

neglected the issue with which courts are now confronted. But this is sheer speculation, and we believe the more prudent course is to assume that the omission of any reference in § 726(b) to chapter 123 was deliberate. *See generally City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 337, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302, 311 (1994) (" '[I]t is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.' " (citation omitted)); *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations omitted)).

Proceeding from that premise, we must reject the majority approach, as it subordinates pre-conversion claims to both chapter 7 administrative claims and § 1930 fees. Judge Hagen's alternative approach, on the other hand, limits the extent of the subordination to chapter 7 claims. Because this latter approach is more faithful to the text of § 726(b), the Court adopts it.

An appropriate order shall enter.

---

**2.** Indeed, the Statement filed by the U.S. trustee ignores the issue altogether. This omission is particularly difficult to understand in light of the fact that the U.S. trustee was aware of the decisions of both Judge Hagen and the Ninth Circuit in *Endy. See* Statement at p. 4 (citing the opinions for a different point).

**3.** Contrary to what the court indicates, § 507(a)(1) has accorded top-priority status to chapter 123 fees and charges since enactment of that statute (and the Code) in 1978.