**In re UNITCAST, INC., f/k/a William Cook North American Unitcast, Inc., Debtor.**

**UNITED STATES of America, Appellant,**

**v.**

**SCHOTTENSTEIN, ZOX & DUNN; Hunter & Schank Co., L.P.A.; Phillip Adams; Bugbee & Conkle; Findley, Davies & Company; William Eachus; Richard Olt; Midwest Environmental Consultants, Inc.; Bruce Comly French, Chapter 7 trustee, Appellees.**

BAP Nos. 97–8061, 97–8083.

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Dec. 3, 1997.

Decided March 26, 1998.

Henry J. Riordan, U.S. Department of Justice, Tax Division, Washington, DC, argued and on brief, for Appellant.

E. James Hopple, Schottenstein, Zox & Dunn, Columbus, OH, argued and on brief, Mary Ann Whipple, Fuller & Henry, Thomas J. Schank, Hunter & Schank Co., Tybo A. Wilhelms, David M. McCarty, Bugbee & Conkle, John P. Stockwell, Stockwell & Cooperman, Howard B. Hershman, Gressley, Kaplin & Parker, H. Buswell Roberts, Jr., Nathan & Roberts, Toledo, OH, Bruce Comly French, Lima, OH, on brief, for Appellee.

Before: LUNDIN, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

After this Chapter 11 case converted to an "administratively insolvent" Chapter 7 case, the United States of America moved for an accounting, disgorgement of fees paid to professionals, and immediate payment of its administrative expense claim. On summary judgment, the bankruptcy court denied the motion, finding that the government could not prove an entitlement to disgorgement because its penalty claim, under IRC § 4971, for the Debtor's failure to adequately fund employee benefit plans, either did not qualify as an administrative expense under 11 U.S.C. § 503(b), or qualified in an amount too small to warrant disgorgement. In a second decision, the bankruptcy court held that 11 U.S.C. § 726(b) did not automatically require only professionals to disgorge interim compensation when a bankruptcy estate became "administratively insolvent." Exercising its discretion, the bankruptcy court considered administrative insolvency as a factor in its decision to disallow a significant portion of the final fee request from the Debtor's bankruptcy counsel. We affirm.

## I. ISSUES ON APPEAL

1) Whether penalties under IRC § 4971 are administrative expenses under 11 U.S.C. § 503(b); and

2) Whether the bankruptcy court abused its discretion by refusing to order only professionals to disgorge interim compensation when this bankruptcy estate became administratively insolvent.

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit. 28 U.S.C. § 158(b)(6). No party opted out of review of this appeal by the BAP.

■ For purposes of appeal, an order is final if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *National City Bank v. Elliott (In re Elliott)*, 214 B.R. 148, 149 (6th Cir. BAP 1997) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879, 887 (1989)). The bankruptcy court's orders rejecting the government's administrative expense claim and refusing disgorgement are final appealable orders.

A bankruptcy court's grant of summary judgment is reviewed de novo. *See, e.g., Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 857 (6th Cir. BAP 1997) (citing *Martin v. Telectronics Pacing Sys., Inc.*, 105 F.3d 1090 (6th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 850, 139 L.Ed.2d 751 (1998)). The same standard applies when the parties have filed cross motions for summary judgment. *First City Bank v. National Credit Union Admin. Bd.*, 111 F.3d 433, 437 (6th Cir.1997) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991)), *cert. denied*, — U.S. —, 118 S.Ct. 1162, 140 L.Ed.2d 174 (1998). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.BANKR.P. 7056 (incorporating FED. R.CIV.P. 56(c)).

■ Whether to order professionals to disgorge interim compensation is a matter

within the sound discretion of the bankruptcy court. *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1315 (6th Cir.1995) ("[R]eview of the bankruptcy court's retention and compensation order is limited to abuse of discretion."). *See also Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir.1997) (holding bankruptcy court's order of disgorgement of attorney fees for failure to abide by disclosure and reporting requirements of the Bankruptcy Code is a matter left to that court's discretion); *In re Anolik*, 207 B.R. 34, 39 (Bankr. D.Mass.1997) (requiring disgorgement of attorney fees in an administratively insolvent case is a matter of discretion). We will reverse a bankruptcy court's decision to grant or deny disgorgement only for an abuse of discretion. "A [bankruptcy court] abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir.1997) (citations omitted); *see also Fordu*, 209 B.R. at 858 (citation omitted).

## III. FACTS

Unitcast, Inc. filed Chapter 11 on May 3, 1993, and operated as a debtor in possession until Bruce Comly French was appointed trustee on June 1, 1995. No plan was confirmed. The case converted to Chapter 7 on July 17, 1995, and Mr. French continued as Chapter 7 trustee. The Chapter 7 estate is "administratively insolvent"—there are insufficient funds, after payment of Chapter 7 administrative expenses, to satisfy all unpaid administrative expenses from the Chapter 11 period.

During the Chapter 11 case the Debtor and the Official Committee of Unsecured Creditors, with court approval, retained several professionals under 11 U.S.C. §§ 327 and 1103. Appellees Schottenstein, Zox & Dunn, William Eachus, Richard Olt, Bugbee & Conkle, Midwest Environmental Consultants, Inc., and Findley Davies & Co., were, respectively, the Debtor's bankruptcy counsel, business and financial consultant, business and financial operations assistant, spe-

cial counsel for workers' compensation and employee issues, environmental consultant, and employee benefit consultant. Appellee Hunter & Schank Co., L.P.A. was counsel to the Creditors' Committee. Appellee Phillip Adams performed accounting services for the Committee.

During the Chapter 11 administrative period, Appellees each received interim compensation pursuant to 11 U.S.C. §§ 331 and 330. These payments ranged from 64% to 100% of the amount requested.

The United States asserts an administrative claim of $1,985,665.12, plus statutory additions. The bulk of this claim, $1,806,004.10, is for penalties pursuant to IRC § 4971(a) and (b), and relates to accumulated funding deficiencies in the Debtor's employee benefit plans under IRC § 412 and 29 U.S.C. § 1082.[1] For plan years ending June 30, 1991, June 30, 1992, and June 30, 1993, the Debtor's accumulated funding deficiencies were $719,755, $1,074,964, and $1,618,320. The remainder of the government's claim, $179,661.03, is postpetition payroll taxes.

During the Chapter 11 administrative period, the government received $2,281,476.28 in payroll taxes from the Debtor. A portion, approximately $260,925, was paid pursuant to an Agreed Order that permitted the Debtor to cure its third quarter 1993 payroll tax liability with monthly payments. The Debtor and the government disagree whether the Debtor satisfied the Agreed Order.

After conversion to Chapter 7, the United States filed a Motion for Accounting, Disgorgement, and Payment of the United States' Post–Petition Tax Claims. The motion sought an accounting of all property of the estate, all claims against the estate, all disbursements made from the estate, and immediate payment in full of the government's asserted administrative claim. The motion further sought disgorgement from all professionals of all payments of interim compensation during the Chapter 11 case, or, in the alternative, of amounts calculated under the formula described in *Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Met-*

*ropolitan Electric Supply Corp.)*, 185 B.R. 505, 512 (Bankr.E.D.Va.1995). The United States Trustee added a motion to determine the manner in which disgorged funds should be distributed and for interest on any disgorged funds.

On cross motions for summary judgment, the bankruptcy court held that the government's administrative claim did not justify disgorgement. *In re Unitcast, Inc.,* 214 B.R. 1010, 1019–21 (Bankr.N.D.Ohio 1997) (*"Unitcast I"*). The bankruptcy court reasoned that "for the [government] to show that disgorgement is warranted in this case, [it] must show that redistribution is necessary to effectuate a pro rata distribution among administrative expense creditors." *Id.* at 1018. The court found that the government's claim for penalties under IRC § 4971 did not qualify as an administrative expense because it did not "relate to" a tax for purposes of § 503(b)(1)(C). *Id.* at 1019–21. Alternatively, only a "very small portion" of the penalties could qualify as administrative expenses because the bulk of any "tax" to which they might relate was not "incurred by the estate." *Id.* at 1020–21. By either calculation, the government's administrative expense claim was not sufficient to trigger disgorgement and the United States Trustee's requests were premature. *Id.* at 1021–22.

On July 1, 1997, the bankruptcy court issued a second decision. *In re Unitcast, Inc.,* 214 B.R. 992 (Bankr.N.D.Ohio 1997) (*"Unitcast II"*). Schottenstein's (the Debtor's counsel's) final fee application was before the court and the United States Trustee objected, renewing its earlier requests for distribution instructions, disgorgement and interest. The court declined to order disgorgement, holding that the Bankruptcy Code did not automatically require professionals to disgorge interim compensation upon administrative insolvency. The bankruptcy court considered the estate's administrative insolvency and other factors and reduced Schottenstein's final compensation by more than 25%, disallowing $225,438.60 in attorney fees and $10,419.05 in expense reimbursement.

---

1. These are parallel provisions of the Internal Revenue Code and the Employee Retirement Income Security Act.

The IRS timely appealed both *Unitcast I* and *Unitcast II*.

## IV. DISCUSSION

### A. Penalties Under IRC § 4971 Qualify as Administrative Expenses Only to the Extent Related to a Tax of a Kind Specified in § 503(b)(1)(B).

Section 503(b) provides:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph....

11 U.S.C. § 503(b) (1994).[2] Administrative expenses are entitled to first priority among unsecured and priority claims. 11 U.S.C. § 507(a)(1).

The Sixth Circuit has embraced "the well-accepted 'benefit to the estate' test, which states that a debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate. The benefit to the estate test limits administrative claims to those where the consideration for the claim

was received during the post-petition period." *PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997) (citations omitted).

#### 1. Postpetition Liabilities.

■■■ "[I]t is an absolute requirement for administrative expense priority that the liability at issue arise post-petition." *Sunarhauserman*, 126 F.3d at 817. While applicable nonbankruptcy law determines if liability on a claim has been incurred, bankruptcy law determines whether the claim arose pre- or postpetition for administrative expense purposes. *Id.* at 818. "[T]he proper standard for determining [a] claim's administrative priority looks to when the acts giving rise to [the] liability took place, not when they accrued." *Id.*

Section 1082 of ERISA prescribes "minimum funding standards" for employers, which "require[ ] every employer maintaining a tax-qualified plan to fund the plan until it is terminated, in amounts determined by the plan's enrolled actuary in accordance with ERISA and the Internal Revenue Code." *Id.* at 815 (citing IRC §§ 404 & 412; 29 U.S.C. § 1082). Minimum funding liability accrues over the plan year, although paid in quarterly installments. 29 U.S.C. § 1082(e); IRC § 412(m). Any amount that remains due for a plan year must be contributed no later than 8½ months after the close of the plan year. IRC § 412(c)(10); 29 U.S.C. § 1082(c)(10). An "accumulated funding deficiency" is the amount by which total charges to a plan's "funding standard account" for all plan years exceeds the total credits to that account for all plan years. IRC §§ 4971(c)(1) & 412(a)(2); 29 U.S.C. § 1082(a)(2).

Section 4971 of the Internal Revenue Code imposes a two tier penalty[3] on an employer's failure to meet "minimum funding standards:"

---

**2.** Section 507(a)(7) was renumbered as § 507(a)(8) by the Bankruptcy Reform Act of 1994. This case was filed prior to the effective date of the 1994 Act.

**3.** In *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 226, 116 S.Ct.

2106, 2114, 135 L.Ed.2d 506 (1996), the Supreme Court found that § 4971 exactions are "treated as imposing a penalty, not authorizing a tax" for priority purposes under Title 11.

**(a) Initial tax.**—For each taxable year of an employer who maintains a plan to which section 412 [of the IRC] applies, there is hereby imposed a tax of 10 percent . . . on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year.

**(b) Additional tax.**—In any case in which an initial tax is imposed by subsection (a) on an accumulated funding deficiency and such accumulated funding deficiency is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of such accumulated funding deficiency to the extent not corrected.

IRC § 4971. Under § 4971(a), a 10% penalty is exacted if an employer fails to cure a deficiency within the statutory grace period. The additional 100% penalty in § 4971(b) is imposed if the initial 10% penalty is not paid within the "taxable period." [4]

The Sixth Circuit determined in *Sunarhauserman* that a debtor's minimum funding obligations under IRC § 412 and 29 U.S.C. § 1082 are administrative expense claims only to the extent "the Debtors' post-petition funding obligation . . . can be tied to employees' actual post-petition services—i.e., hours actually worked by employees post-filing." *Sunarhauserman*, 126 F.3d at 820. The debtors in *Sunarhauserman* filed Chapter 11 on October 5, 1989. They made contributions to their ERISA qualified pension plan through the quarterly payment due October 15, 1989. After the petition, the debtors amended their pension plan to freeze benefits and eventually negotiated a distress termination. Between the petition and termination of the pension plan, the debtors operated their business with a workforce that decreased from 260 to 33.

The Pension Benefit Guaranty Corporation ("PBGC") filed an administrative expense claim for $338,143 for unpaid "postpetition" minimum funding contributions. The debtors objected. The bankruptcy court held "that the 'non-normal cost' component of [PBGC's] claim was not entitled to administrative expense priority because it was based on an experience loss that was realized prepetition. . . . [T]he 'normal cost' component of [PBGC's] administrative expense claim [was adjusted] to reflect the post-petition decrease in the Debtors' workforce and freeze of benefit accruals.'" *Id.* at 814.[5] The bankruptcy court allowed only $67,612 of the PBGC's claim as an administrative expense. The district court affirmed.

On appeal, the PBGC urged and the Sixth Circuit rejected essentially the same arguments the IRS makes here. First, the Sixth Circuit rejected the PBGC's contention that the bankruptcy and district courts "improperly applied the 'benefit to the estate' test, which required that a claim be based on consideration after the bankruptcy petition [was] filed in order to be entitled to administrative expense priority." *Id.* The Sixth Circuit held that most of the PBGC's claim arose before the petition because the pension plan's actuarial accrued liability, or nonnormal costs, related to a *prepetition* liability—benefits earned by employees before the bankruptcy filing. *Id.* at 819–21.

The Sixth Circuit then rejected the PBGC's assertion that it was "improper[ ][to] limit[ ] administrative expense priority to that portion of its post-petition minimum funding contribution claim attributable to pension benefits actually earned by employee/participants employed by the debtors [postpetition]." *Id.* at 819. The Sixth Circuit reminded the PBGC that ERISA limitations on "allocation" of mini-

**4.** The "taxable period" is "the period beginning the end of the plan year in which there is an accumulated funding deficiency and ending on the earlier of (A) the date of mailing of a notice of deficiency with respect to the tax imposed by subsection (a), or (B) the date on which the tax imposed by subsection (a) is assessed." IRC § 4971(c)(3).

**5.** "A pension plan's 'normal cost' is the annual cost of future pension benefits and administrative expenses assigned, under an actuarial cost meth-

od, to years subsequent to a particular valuation date of a pension plan. 29 U.S.C. § 1002(28). A pension plan's . . . 'non-normal cost,' refers simply to that portion of a plan's annual cost that is not 'normal cost[,]' [s]ee 29 U.S.C. § 1002(29)[,] . . . [including] seven statutory charges that may affect a pension plan's funding standard account, depending on which cost method the plan uses." *Sunarhauserman*, 126 F.3d. at 816 (citing 29 U.S.C. § 1082(b)(2); IRC § 412(b)(2)).

mum funding requirements were not determinative of priorities in bankruptcy: "[R]egardless of the substantive law on which the claim is based, the proper standard for determining that claim's administrative priority looks to when the acts giving rise to the liability took place, not when they accrued." *Id.* at 818. In *Sunarhauserman*, "[t]he bankruptcy court properly found that the non-normal cost component, which consisted of an experience loss realized in the prior plan year, was a liability that arose prepetition, while the normal cost component, to the extent it consisted of benefits earned after the Debtors entered bankruptcy, was a liability that arose post-petition." *Id.* at 819.

The Sixth Circuit concluded that the bankruptcy court properly adjusted the debtors' liability to reflect postpetition reductions in workforce and the freezing of benefits. *Id.* at 820–21. Only those portions of the debtors' postpetition funding obligation tied to employees' postpetition services could be "actual and necessary" expenses of administration under § 503(b). *Id.*

■ *Sunarhauserman* is binding precedent and we discern no reason to treat the § 4971 penalty assessed for failure to cure a minimum funding deficiency better than, or different from, the deficiency itself. As in *Sunarhauserman*, the acts that gave rise to this debtor's § 4971 liability were in large part the prepetition labors of the Debtor's employees. The Debtor's § 4971 liability can be characterized as "postpetition" only to the extent *Sunarhauserman* would allocate the penalties to postpetition labor by Debtor's employees.

### 2. Postpetition § 4971 Penalties as Administrative Expenses.

The postpetition portion of the government's § 4971 penalty claim will be an allowed administrative expense only to the extent it otherwise qualifies under § 503(b). The government acknowledges that § 4971 penalties are not a tax within § 503(b)(1)(B), but asserts the penalties achieve administrative priority under § 503(b) generally, or under § 503(b)(1)(C).

### a. "Including" Is Not *All* Encompassing.

■ Section 503(b) describes types of claims that can be administrative expenses; its examples are not exhaustive. *See In re Mary James, Inc.*, 211 B.R. 227, 228 (Bankr. E.D.Mich.1997) ("The list of administrative expenses in § 503(b) is not exhaustive."). "[B]ecause administrative expense priority (and other priorities in distribution) are contrary to the Bankruptcy Code's general policy of equal distribution, these priorities should be narrowly construed." *Missouri Dep't of Rev. v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.)*, 64 F.3d 1146, 1148 (8th Cir.1995) (citations omitted). *See Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir.1987) ("The general policy of the Bankruptcy Code is to distribute all assets equitably.... [P]riority may only be granted pursuant to this policy....").

The government argues that use of the term "including" twice in § 503(b) creates an ambiguity. Citing *United States v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.)*, 916 F.2d 363 (6th Cir.1990), the government contends the Sixth Circuit would treat postpetition § 4971 penalties as "included" administrative expenses.

In *Flo–Lizer*, the Sixth Circuit held that interest on a tax liability "incurred by the estate" is entitled to administrative expense priority notwithstanding the absence of a specific reference to interest in § 503(b). *Id.* at 366. The double use of "including" in § 503(b) was acknowledged in *Flo–Lizer*, and the Sixth Circuit resolved any ambiguity by considering the treatment of interest on priority tax claims under the Bankruptcy Act and the legislative history of § 503(b). *Id.* at 365–66.

Under the Bankruptcy Act, interest on administrative priority taxes had long been entitled to the same priority as the tax. *Id.; see Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). Nothing in the legislative history of § 503(b) convinced the court that Congress intended to abrogate that rule:

The inclusion of penalties on postpetition taxes in section 503(b) indicates that Congress was willing to have the bankruptcy

estate pay for expenses that arise out of the failure of a debtor in possession or the trustee to pay taxes in a timely manner. There is no reason why Congress would give a lesser priority to interest than to penalties.

*Flo–Lizer,* 916 F.2d at 366.

*Flo–Lizer* does not expand to embrace § 4971 penalties. The extensive treatment of tax related penalties in the Bankruptcy Code is fundamentally different from the Code's silence with respect to interest on taxes incurred by an estate. Certain tax related penalties are expressly afforded administrative expense priority under § 503(b)(1)(C). Other tax related penalties are categorically relegated to seventh priority under (former) § 507(a)(7)(G). Any claim for a tax described in § 507(a)(7) is excluded from administrative priority under § 503(b)(1)(B). Any penalty that is not compensation for actual pecuniary loss and that arose before the earlier of the order for relief or the appointment of a trustee is subordinated in Chapter 7 cases pursuant to § 726(a)(4). Specific treatment of penalties throughout the priority and distribution sections of the Bankruptcy Code demonstrates Congressional intent to exclude from § 503(b) status penalties that are not enumerated. *See Raleigh & Gaston Ry. Co. v. Reid,* 80 U.S. (13 Wall) 269, 270, 20 L.Ed. 570 (1871) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode."); *see also Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.' ").

The Bankruptcy Code's express treatment of penalties on taxes incurred by the estate is a codification of pre-Code law. Under the Bankruptcy Act, § 57j disallowed debts owing to the United States as a penalty or forfeiture, "except of the amount of the pecu-

niary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose,...." 11 U.S.C. § 93j (repealed 1979). In *Boteler v. Ingels,* 308 U.S. 521, 60 S.Ct. 29, 84 L.Ed. 442 (1939), the Supreme Court concluded that Bankruptcy Act § 57j applied only to prepetition tax related penalties. Finding no provision of the Bankruptcy Act that addressed postpetition tax related penalties, the Court looked to 28 U.S.C. § 124a, predecessor to 28 U.S.C. § 960:

> Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, ..., be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation....

*Boteler,* 308 U.S. at 59, 60 S.Ct. at 31 (quoting 28 U.S.C. § 124a (repealed 1948)).[6] The Court concluded that 28 U.S.C. § 124a obligated the trustee to abide by applicable state and local tax laws—including provisions for penalties—during the pendency of a bankruptcy case. *Boteler,* 308 U.S. at 61, 60 S.Ct. at 32.

The Court revisited *Boteler* in *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). In *Nicholas,* the United States asserted a penalty against a trustee for failure to file returns for taxes incurred during a Chapter XI arrangement. The Court found "[n]o legitimate interest [that] would be served by permitting the trustee to escape the unburdensome responsibility of merely filing the returns and thereby notifying the United States of the taxes that [were] due." *Id.* at 695, 86 S.Ct. at 1686.

In § 503(b)(1)(C), Congress codified the results in *Nicholas* and *Boteler.* In *Nicholas,* the penalty related to a tax that was, in the parlance of the Bankruptcy Code, "incurred by the estate." *See Varsity Carpet*

---

**6.** The successor to 28 U.S.C. § 124a is codified at 28 U.S.C. § 960:

> Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local

taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960.

Servs., Inc. v. Richardson (In re Colortex Indus., Inc.), 19 F.3d 1371, 1384 (11th Cir. 1994) ("At the time Nicholas was decided, there was no statutory provision similar to § 503(b)(1)(C)."). The Boteler Court had to look beyond the Bankruptcy Act for the imposition and priority of penalties related to a postpetition tax. When Congress enacted the Bankruptcy Code, it provided expressly for both pre- and postpetition penalties. Penalties that relate to a tax of the type specified in § 503(b)(1)(B) are the only penalties given administrative priority by the Bankruptcy Code.

The legislative history to § 503(b) indicates that Congress considered the priority of postpetition tax related penalties, and determined that some but not all would be allowed as administrative expenses. See S.Rep. No. 95–989, 95th Cong., 2d Sess. 66 (1978) (accompanying S2266). Congress balanced the interests of governments, innocent unsecured creditors who suffer the allowance of priority penalties and the interests of the marketplace in maintaining a level field of play. The government has offered no compelling reason for the Panel to interfere with that balance.

### b. Penalties Allowed Under § 503(b)(1)(C) Must Relate to a Tax of a Kind Specified in § 503(b)(1)(B).

The government argues grammar for the proposition that § 4971 penalties are entitled to administrative priority under § 503(b)(1)(C), even if unrelated to a tax specified in § 503(b)(1)(B). · The government contends that the absence of a comma between "reduction in credit" and "relating to a tax ..." dictates that the antecedent phrase "relating to a tax of a kind specified in subparagraph (B) of this paragraph" limits only a "reduction in credit," and not "any fine, penalty."

The government cites no supporting case authority or legislative history for this parsing of § 503(b), nor has the Panel's research produced any. The case law uniformly recites or assumes that to be allowed under § 503(b)(1)(C), any fine, any penalty and any reduction in credit, must relate to a tax allowed under § 503(b)(1)(B). See, e.g., In re Mort Hall Acquisition, Inc., 181 B.R. 860

(Bankr.S.D.Tex.1994). Cf. Flo–Lizer, Inc., 916 F.2d at 366 ("The inclusion of penalties on postpetition taxes in section 503(b) indicates that Congress was willing to have the bankruptcy estate pay for expenses that arise out of the failure of a debtor in possession or the trustee to pay taxes in a timely manner.").

■■■ The government offers the elusive "doctrine of the last antecedent" to bolster its construction. Section 503(b)(1)(C) reads, "there shall be allowed administrative expenses, . . ., including, . . ., any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph." 11 U.S.C. § 503(b)(1)(C). "Under [the doctrine of the last antecedent], qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote." Elliot Coal Mining Co. v. Director, Office of Workers' Compensation Programs, 17 F.3d 616, 629 (3d Cir.1994) (internal quotations and citation omitted).

Application of this "doctrine" to isolate the relationship test of § 503(b)(1)(C) from fines and penalties is not required grammar and makes a mess of other words and punctuation in the section. See Nobelman v. American Savs. Bank, 508 U.S. 324, 330–31, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993). The Supreme Court refused a similar grammatical argument in United States v. Bass, 404 U.S. 336, 340 n. 6, 92 S.Ct. 515, 518 n. 6, 30 L.Ed.2d 488 (1971) (interpreting the phrase "receives, possesses, or transports in commerce or affecting commerce ...," the Supreme Court rejected argument that the absence of a comma after "transports" indicated congressional intent to limit the qualifying phrase—"in commerce or affecting commerce"—to the last antecedent). As explained in Bass:

> [M]any leading grammarians, while sometimes noting that commas at the end of a series can avoid ambiguity, concede that use of such commas is discretionary. When grammarians are divided, and surely where they are cheerfully tolerant, we will not attach significance to an omitted comma. It is enough to say that the statute's

punctuation is fully consistent with the respondent's interpretation, and that in this case grammatical expertise will not help to clarify the statute's meaning.

*Id.* at 340 n. 6, 92 S.Ct. at 518 n. 6 (citations omitted).

The use of a comma before the conjunction "or" in § 503(b)(1)(C) is not consistent with the government's reading of the section. The first two nouns of § 503(b)(1)(C), "any fine" and "penalty," are separated by commas as well as separated from "reduction in credit" by a comma before the conjunction "or." In *Elliot Coal Mining*, the Third Circuit addressed the use of a comma before the coordinate conjunction "or," and explained:

Under the normal rules of English punctuation for words in a series, it is the absence of a comma or other punctuation before the coordinate conjunction "or" that would indicate it and its modifier, the limiting adjective clause, are to be treated separately rather than as part of the whole series. *See* The Gregg Reference Manual at 35 (7th ed.1993); *see also* 1A Sutherland Statutory Construction § 21.15. Conversely, the presence of a comma before the last clause in the statute suggests that the limiting clause applies to the entire series.

This use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase. *Cf. National Sur. Corp. v. Midland Bank*, 551 F.2d 21, 34 (3d Cir.1977) (lack of a comma limited application of the qualifying language to the word immediately preceding it).

*Elliot Coal Mining Co.*, 17 F.3d at 630.

■■■ Section 503(b)'s punctuation accurately reflects the balanced treatment of tax penalties intended by Congress. If we were to read "relating to a tax of a kind specified in subparagraph (B) of this paragraph" to modify only "reduction in credit," *all* fines and *all* penalties would become eligible for administrative priority. That result is not consistent with the Bankruptcy Code's detailed treatment of penalties or the narrow

construction given priorities under the Code. If Congress intended the limiting phrase to extend only to "reductions in credit" it would simply have omitted the comma before "or," or it would have written "fines and penalties or reductions in credit relating to a tax...." The bankruptcy court correctly concluded that the limiting clause in § 503(b)(1)(C) applies to fines *and* penalties *and* reductions in credit.

### c. Section 4971 Penalties Do Not Relate to a Tax Allowable Under § 503(b)(1)(C).

Circularly, the United States contends, "[w]hen an excise tax claim under 26 U.S.C. § 4971 is treated as a claim for penalties under the Bankruptcy Code, the claim by definition still relates to a 'tax' claim for purposes of Section 503(b)(1)(C)." In other words, the § 4971 exaction serves as both the penalty and the tax to which it relates under § 503(b)(1)(B). This argument makes nonsense of the phrase "relating to a tax" and ignores altogether that "taxes" and "penalties ... relating to a tax" have separate identities and differing treatments throughout the Bankruptcy Code.

Falling back, the government scours the IRC for a tax to which § 4971 penalties might relate. Candidates include: the Debtor's postpetition income taxes; employment taxes on postpetition wages paid by the Debtor; and, the Debtor's liability under IRC § 412(n) which is characterized as a "tax."

"Relating to" is not defined by the Bankruptcy Code. Black's Law Dictionary defines "relate" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with...." BLACK'S LAW DICTIONARY 1288 (6th ed.1990).[7] This definition confirms the ordinary use of the word—a nexus, link or connection.

■■■ Section 4971 penalties lack sufficient connection, pertinence or bearing upon income taxes and employment taxes to satisfy the "relating to" test. There is no direct or indirect cause and effect relationship be-

---

7. *See National City Bank v. Plechaty (In re Plechaty)*, 213 B.R. 119, 125 (6th Cir. BAP 1997) ("When faced with statutory language where the words are not defined in the Bankruptcy Code, the Supreme Court has in numerous bankruptcy decisions relied on Black's Law Dictionary.").

tween the Debtor's income tax or employment tax liabilities and the § 4971 penalties. The Debtor's failure to pay either tax would not impact the § 4971 penalties, and vice versa. Any broader interpretation would propel every penalty in the IRC into administrative expense contention in bankruptcy cases.

Section 412 of the Internal Revenue Code does not provide the missing link, but for different reasons. Section 412 defines minimum funding standards for qualified pension plans; it does not impose a "tax" for bankruptcy purposes. In *CF & I Fabricators*, the Supreme Court reaffirmed "the interpretive principle that characterizations in the Internal Revenue Code are not dispositive in the bankruptcy context...." *CF & I Fabricators*, 518 U.S. at 224, 116 S.Ct. at 2113. "'[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government[,]'" or, stated differently, "'[a] tax is an enforced contribution to provide for the support of government....'" *Id.* (quoting *New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906)); *see also Ohio Bureau of Workers' Compensation v. Yoder (In re Suburban Motor Freight, Inc.)*, 36 F.3d 484, 487 (6th Cir.1994) (defining taxes as "'those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it'").

Section 412 relates to ERISA qualified employee benefit plans which must meet the requirements of IRC § 401(a). The precatory language of § 401(a) mandates that any qualified pension plan be "for the exclusive benefit of ... employees or their beneficiaries." IRC § 401(a). Section 412 provides support to and protects employees who participate in benefit plans; it does not support a governmental unit and it is not a "tax" for bankruptcy purposes.

## B. Disgorgement of Professional Fees.

### 1. Section 726 Does Not Mandate Disgorgement from Professionals upon Administrative Insolvency.

Section 726 of the Bankruptcy Code fixes the order of distribution of assets in Chapter 7 cases. Estate property is distributed "first, in payment of claims of the kinds specified in, and in the order specified in, section 507 of the [Bankruptcy Code.]" 11 U.S.C. § 726(b). Section 507(a)(1) confers first priority on administrative expenses allowed under § 503(b).

Section 726(b) addresses distribution of assets when an estate is "administratively insolvent," and after conversion from a rehabilitative Chapter to Chapter 7:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this Chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this Chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other Chapter of this title or under this Chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).

That a bankruptcy judge has authority to order disgorgement of interim compensation when an estate turns out to be administratively insolvent is not here disputed. *See, e.g., Matz v. Hoseman*, 197 B.R. 635 (N.D.Ill. 1996); *Anolik*, 207 B.R. 34; *In re North Bay Tractor, Inc.*, 191 B.R. 186 (Bankr.N.D.Cal. 1996); *Metropolitan Elec. Supply Corp.*, 185 B.R. 505; *In re Lighting Ctr., Inc.*, 178 B.R. 320 (Bankr.D.R.I.1995); *In re Kingston Turf Farms, Inc.*, 176 B.R. 308 (Bankr.D.R.I. 1995); *Guinee v. Toombs (In re Kearing)*, 170 B.R. 1 (Bankr.D.D.C.1994); *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bankr.N.D.Ohio 1989). The source and nature of that authority is less certain.

The government urges a line of authority that it reads to *require* disgorgement of in-

terim compensation by professionals in every case of administrative insolvency to achieve the "pro rata" disbursement described in § 726(b). *See In re Kingston Turf Farms, Inc.*, 176 B.R. at 310 ("[D]isgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code, i.e., to ensure that all creditors of the same class share pro-rata in the available pool of funds."); *In re Goffena*, 175 B.R. 386, 392 (Bankr.D.Mont.1994); *Metropolitan Elec. Supply Corp.*, 185 B.R. at 508–11 (Chapter 11 professionals ordered to disgorge fees to pay Chapter 7 administrative expenses pro rata). Disgorgement, says the government, is mandatory under § 726(b), and affects only professionals. *See Matz v. Hoseman*, 197 B.R. 635, 639–40 (N.D.Ill.1996) ("An award of interim fees by the bankruptcy court under § 331 is not final, [citation omitted], and is subject to later review by the court." Any payments made to professionals under such orders remain property of the bankruptcy estate recoverable under § 549.); *In re Lochmiller Indus., Inc.*, 178 B.R. 241, 251–53 (Bankr.S.D.Cal.1995); *In re Kearing*, 170 B.R. at 7–8 ("Professionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims. To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code.").

Another line of cases finds no mandatory disgorgement and redistribution of professional compensation in § 726(b), but acknowledges that the bankruptcy court has discretion to order disgorgement as part of the statutory management of professional fees and expenses under 11 U.S.C. §§ 330 and 331. *See In re Anolik*, 207 B.R. 34 (Bankr. D.Mass.1997) (citing *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255, 259 (Bankr. N.D.Ohio 1989)). As one court observed, "[d]isgorgement is a harsh remedy, one that should be applied only when mandated by the equities of a case." *Anolik*, 207 B.R. at 39 (agreeing with *Vernon Sand & Gravel, North Bay Tractor*, and *In re Boston Shipyard Corp.*, No. CIV. A. 92–10694–Z, 1993 WL 370629, at *3 (D.Mass. Sept. 14, 1993)).

These courts approach disgorgement on a case by case basis and take into consideration:

whether the party facing disgorgement had a reasonable expectation that the payment received was final, ... whether any party who would suffer from nondisgorgement has objected to the trustee's proposed final distribution[,] ... [and whether] a professional ha[d] reason to believe that its goal [was] unachievable but nevertheless continue[d] to unreasonably amass fees....

. . . .

Where disgorgement by any party is ordered, such disgorgement should not exceed the amount that would be required to achieve a pro rata distribution assuming that all parties subject to disgorgement were ordered to relinquish funds, regardless of whether the court actually so ordered.

*Id.* at 39–40 (citations and footnotes omitted).

■■■ We agree with the bankruptcy court that § 726(b) does not compel disgorgement from professionals in every case of administrative insolvency. Instead, disgorgement is a remedy within the discretion of bankruptcy judges as the final arbiters of professional fee requests under §§ 330 and 331 of the Code. Administrative insolvency is one factor appropriately considered in the exercise of that discretion.

Section 726(b) contemplates "pro rata" distribution based on the requests for payment of administrative expenses allowable at the time of distribution. Nothing in § 726(b), in its predecessors under prior law, or in the legislative history of the Code compels trustees of administratively insolvent estates to reach back through the prior administrative period(s) to recover (only) payments to professionals, that disgorgement then transforms into (unpayable) "administrative expenses."

The rationale urged by the government effects a categorically subordinated priority for professionals in all cases of administrative insolvency, in disregard of the priority scheme crafted by Congress. In *United States v. Noland*, 517 U.S. 535, 535–37, 116

S.Ct. 1524, 1525, 134 L.Ed.2d 748 (1996), the Supreme Court held "the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." As the *Anolik* court correctly observed, "court authorized professionals are not second class service providers, nor does their function include the disproportionate subsidization of bankruptcy cases." *Anolik*, 207 B.R. at 40.

### 2. The Bankruptcy Court Did Not Abuse Its Discretion.

We will not disturb a bankruptcy court's exercise of discretion unless the judge applied the wrong legal standard, misapplied the correct legal standard, relied on clearly erroneous factual findings, or the Panel is left with the firm conviction that a mistake has been made. *Fordu*, 209 B.R. at 858 (citations omitted).

While there is no bright line or litmus test that directs when disgorgement is appropriate, this record reveals no abuse of discretion by the bankruptcy court. Other than administrative insolvency, the only evidence offered by the government in support of disgorgement and redistribution was the Debtor's alleged failure to comply with an Agreed Order that permitted monthly payments to cure a postpetition payroll tax delinquency. By argument only, the government assigns responsibility to all the Professionals for the Debtor's failure to fully perform the Agreed Order. The role played by the Creditors' Committee's counsel, by the workers' compensation expert or by the environmental consultant in the Debtor's failure to remit payroll taxes is not explained by the government. The bankruptcy court refused fully 25% of Debtor's counsel's final request for fees and expenses based in part on the estate's administrative insolvency. When pressed at oral argument, counsel for the government could not direct this Panel to any evidence of bad faith or misconduct by any professional. The bankruptcy court's rejection of disgorgement in this case did not constitute an abuse of discretion.

## V. CONCLUSION

The decisions of the bankruptcy court are **AFFIRMED.**